IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CATRICE CRAWFORD,

             Plaintiff,

    v.

GEORGIA DEPARTMENT OF
TRANSPORTATION (GDOT),

             Defendant.

CIVIL ACTION FILE NO.

1:16-CV-03810-WSD-JFK

## NON-FINAL REPORT AND RECOMMENDATION

Plaintiff Catrice Crawford filed the above-styled employment discrimination action against Defendant Georgia Department of Transportation ("GDOT"), in the Superior Court of Fulton County, on September 12, 2016. [Docs. 1 and 1-2, Exhibit ("Exh.") B ("Complt.")].  Defendant removed the complaint to federal court based on federal question jurisdiction on October 13, 2016. [Doc. 1]. Although the complaint is generally a narrative that does not conform to federal pleading rules set forth in Fed. R. Civ. P. 8 and 10, Plaintiff appears to assert federal claims of retaliation, discriminatory pay, and discrimination based on race and disability. [Complt.]. As part of the retaliation for opposing the alleged discrimination, Plaintiff also contends that Defendant interfered with her rights under federal leave provisions. [Id.].

Plaintiff's federal claims are brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Equal Pay Act ("EPA"), 29 U.S.C. § 206, *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2612, *et seq.*  [Id.].  Plaintiff has also asserted a state law claim under the Georgia Fair Employment Practices Act ("FEPA"), O.C.G.A. § 45-19-20, *et seq.*  [Id.].  Defendant filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).  [Doc. 3].  Plaintiff filed a brief in opposition [Doc. 6], and Defendant filed a reply in support of the motion to dismiss  [Doc. 7].

## I.    Facts

On a motion to dismiss under Rule 12(b)(6), the complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff.  Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006); M.T.V. v. DeKalb County Sch. Dist., 446 F.3d 1153, 1156 (11th Cir. 2006).  "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th

2

Cir. 2002) (citations omitted).  Accordingly, the following factual allegations are drawn from the Complaint.[1]

Plaintiff alleges that her employment with the GDOT began on April 15, 2005, as a Program Technician.  [Complt. ¶ 2.I.a.].  Over the next few years, Plaintiff received promotions and increases in her salary.  [Id. ¶ 2.I.a. -b.].  However, Plaintiff alleges that, after filing an "In-House Grievance" on January 14, 2013, based on "unfair treatment, unlawful discrimination, and . . . managers . . . erroneously applying GDOT policies and procedures[,]" her "work environment shifted for the worse."  [Id.

---

[1] Attached to both Defendant's motion to dismiss and Plaintiff's brief in response are the charges Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") and the right to sue notices mailed to Plaintiff from the EEOC.  [Doc. 3, Exhs. A-D; Doc. 6, Exh. A].  When deciding a Rule 12(b)(6) motion, the court has discretion to determine whether to accept documents beyond the pleadings.  Rule 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d) (as amended 2009).  However, an exception to this rule occurs when documents central to the plaintiff's case are referred to in the complaint.  See Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).  The complaint references Plaintiff's filing of the charges with the EEOC [Complt. ¶¶ 2.I. and III. and 3.I.] and administrative exhaustion is central to Plaintiff's Title VII and ADA claims, see Dixon v. Philadelphia Housing Auth., 43 F. Supp. 2d 543, 545 (E.D. Pa. 1999) (the court considered plaintiff's EEOC complaint "without converting the motion to dismiss to a summary judgment motion"); Greene v. Term City, Inc., 828 F. Supp. 584, 587 n.1 (N.D. Ill. 1993) ("the court deems the EEOC charge to be part of the pleadings").  Accordingly, the court will consider these exhibits in ruling on the motion to dismiss.

¶ 2.I.c.].  Plaintiff alleges that there were three "rounds" of retaliation, the first occurring during the period March 4, 2013, through March 27, 2013, during which her supervisors issued performance and disciplinary write-ups, conducted intimidating meetings and altered her work assignments.  [Id. ¶ 2.II.].  This conduct, Plaintiff alleges, violated the FEPA, the Code of Ethics for Government Service, and the Governor's Executive Order of January 10, 2011.  [Id.].

Due to this conduct, Plaintiff filed a charge of discrimination with the EEOC on March 27, 2013, based on race and retaliation.  [Id. ¶ 2.III.; Doc. 3, Exh. A ("3/27/13 EEOC Charge")].[2]  Thereafter, the "round 1 retaliation and harassment" continued through May 6, 2013, which included "denying training, an unnecessary coaching write-up, [and] denying [Plaintiff] qualified leave of absence." [Complt. ¶ 2.IV.].  This conduct is alleged by Plaintiff to have violated the FMLA and the EPA.  [Id.].

Plaintiff next alleges that a "second round of retaliation and harassment" occurred from May 6, 2013, through August 2, 2013, involving her supervisors "denying/approving training, taking a qualified leave of absence, demotion, computer sabotage, and write-ups." [Id. ¶ 2.V.].  The third and final round "of a more aggressive

_____

[2]In that charge, alleging discrimination based on race and retaliation, pursuant to Title VII, Plaintiff identified a specific act of discipline occurring on March 14, 2013.  [3/27/13 EEOC Charge].

AO 72A
(Rev.8/82)

form of retaliation" took place from August 5, 2013, through September 12, 2013, when Plaintiff was terminated from her employment, and involved using GDOT policies and procedures to use sick leave against her, "to deny and ignore reasonable accommodations for FMLA for my oncologist, daughters medical condition and back injury," denying attendance at meeting and issuing performance accusations. [Id. ¶ 2.VI.]. Plaintiff specifically alleges that from August 5, 2013, through August 19, 2013, she requested FMLA leave due to a back injury which was denied on August 21, 2013, including ignoring health accommodation for Plaintiff's daughter, violating the FMLA. [Id. ¶ 2.VI.a.]. And on September 10, 2013, Plaintiff was directed to move her office and denied assistance to do so in violation of the ADA. [Id. ¶ 2.VI.b.].[3]

After her termination, Plaintiff filed a second EEOC charge of discrimination on April 11, 2014. [Doc. 3, Exh. B ("3/11/14 EEOC Charge")]. Plaintiff alleged discrimination pursuant to Title VII based on her race and sex, retaliation pursuant to Title VII due to her complaints of discrimination that resulted in disciplinary write-ups, changes in job duties, work assignments and projects, denial of overtime and promotions, demotion, and denial of reasonable accommodation, and also including

---

[3]Plaintiff alleged that the retaliation continued after September 12, 2013, when GDOT opposed unemployment compensation. [Id. ¶ 2.VII.].

5

violating the ADA and denial of medical leave.  [Id.].  On August 7, 2014, the EEOC issued right to sue letters on the 3/27/13 EEOC Charge and the 3/11/14 EEOC Charge. [Doc. 3, Exhs. C and D ("Right to Sue Letters")].  In both letters, Plaintiff was advised that, with respect to her Title VII and ADA claims, "Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost."  [Id. (emphasis in original)].  With respect to Plaintiff's EPA claim, she was advised that such "suits must be filed in federal or state court within 2 years (3 years for wilful violations) of the alleged EPA underpayment." [Id.].  Plaintiff filed her complaint in the State Court of Fulton County on September 2, 2016.  [Doc. 1; Complt.].

Additional facts will be set forth as necessary during discussion of Defendant's motion to dismiss.

## II.      Standard of Law

The Federal Rules of Civil Procedure include no requirement that a plaintiff detail the facts upon which the plaintiff bases a claim.  Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (as amended 2007).  Accordingly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

6

factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted); accord Financial Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory")
(citations and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," i.e., they must do more than merely create a "'suspicion [of] a legally cognizable right of action,' on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965 (citations omitted) (emphasis omitted). "Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief[.]'" Stephens, 500 F.3d at 1282 (quoting Twombly, 127 S. Ct. at 1966-67). A plaintiff's complaint will be dismissed if it does not contain "factual content that allows the court to draw the reasonable inference that the defendant is

7

liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The court's inquiry at this stage of the proceedings focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted). And, a court reviewing a motion to dismiss must keep in mind that a "motion to dismiss for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint; it does not decide the merits of the case." Wein v. American Huts, Inc., 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004) (citing Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984)). "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law." Bernard v. Calejo, 17 F. Supp. 2d 1311, 1314 (S.D. Fla. 1998) (citing Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) ("[T]he court may dismiss a complaint . . . when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.")); see also Glover v. Liggett Group, Inc., 459 F.3d 1304,

1308 (11th Cir. 2006) (same); <u>Aque v. Home Depot U.S.A., Inc.</u>, 629 F. Supp. 2d 1336, 1350 (N.D. Ga. 2009).

The law establishes that "[a] document filed *pro se* is 'to be liberally construed' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" <u>Erickson</u>, 127 S. Ct. at 2200 (citations omitted). Nevertheless, nothing in that leniency excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. "Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still must state a claim upon which the Court can grant relief." <u>Grigsby v. Thomas</u>, 506 F. Supp. 2d 26, 28 (D. D.C. 2007).

The court will apply these standards in ruling on the motion to dismiss.

## III.  Discussion

In the motion to dismiss, Defendant GDOT raises the following grounds. Defendant asserts that Plaintiff's Title VII and ADA claims are untimely because she did not file the complaint within ninety days of receiving the right to sue letters mailed on August 7, 2014, and, therefore, these claims must be dismissed. [Doc. 3 at 6-7, 9-10]. Defendant further contends that Plaintiff's ADA claims for monetary damages are barred by Eleventh Amendment immunity. [<u>Id.</u> at 10-11]. With respect to

9

Plaintiff's EPA claims, Defendant asserts that Plaintiff has failed to allege any facts setting forth her entitlement to relief and that any EPA claims are barred by the two-year statute of limitations. [Id. at 11-12]. Likewise, Defendant contends that Plaintiff's FMLA claims are barred by the two-year statute of limitations and that Eleventh Amendment immunity bars any FMLA claims for Plaintiff's self-care medical leave. [Id. at 7-8]. And, with respect to Plaintiff's claim of violation of the Georgia FEPA, Defendant asserts that Plaintiff's claims should be dismissed for failure to comply with statutory administrative exhaustion requirements. [Id. at 12-13].

In response,[4] Plaintiff states that she is providing facts and evidence concerning the allegations against GDOT. [Doc. 6 at 1]. Plaintiff acknowledges that the Right to Sue Letters were mailed to her home address on August 7, 2014, but, without explanation, contends that the "discrimination charges was [sic] omitted," and for that reason, she "did not pursue the 'Right to Sue' because it would not have solved the root cause of my termination from GDOT . . . ." [Id. at 2]. The remainder of Plaintiff's response is a recitation of factual allegations, containing additional

---

[4]On November 4, 2016, Plaintiff filed a document labeled, "Plaintiff's Certificate of Interested Persons (CIP) Order." [Doc. 6]. However, the document is Plaintiff's response to the motion to dismiss and will be treated by the court, as did Defendant, as such.

10

allegations and details not included in the complaint.[5]   [Id. at 2-12].  However, she does not address the specific arguments asserted by Defendant in seeking dismissal of the claims, that is, she does not address why the Title VII and ADA claims should not be dismissed as untimely, why the EPA and FMLA claims should not be dismissed as being filed outside the two-year statute of limitations, why the Eleventh Amendment does not bar the ADA claims and the FMLA self-care claims, or why the FEPA claim should not be dismissed for lack of administrative exhaustion.  [Doc. 6].

"Fed. R. Civ. P. 12(b) prohibits [the court] from looking beyond the 'four corners' of [the] Complaint or considering any additional allegations Plaintiff included in [her] Response." Moore v. Miami–Dade County, 502 F. Supp. 2d 1224, 1229 (S.D. Fla. 2007).  Accord Greason v. Georgia Dept. of Revenue, 2012 WL 3022012, at *4 (N.D. Ga. June 20, 2012) (claims not raised in the complaint "will not be considered by the court in its analysis of [a] Rule 12(b)(6) motion to dismiss"), report and recommendation adopted by 2012 WL 3020406 (N.D. Ga. July 24, 2012); and see Essien v. CitiMortgage, Inc., 2015 WL 11251952, at *4 n.4 (N.D. Ga. January 30, 2015) (same), report and recommendation adopted by 2015WL 11280330 (N.D. Ga.

---

[5]Plaintiff also attaches hundreds of pages of documents, unauthenticated, to her response brief.  [Doc. 6, Attachments].

AO 72A
(Rev.8/82)

March 2, 2015); <u>McClung v. Mortg. Electronic Registration Systems, Inc.</u>, 2012 WL 1642209, at *7 (N.D. Ala. May 7, 2012) (same).  And "'[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss[.]'" <u>Walton v. Secretary of Veterans Affairs</u>, 2014 WL 793591, at *4 (N.D. Ga. February 27, 2014) (citation omitted).  Accordingly, the court will not consider the additional allegations of fact or new claims in ruling on the motion to dismiss.  However, as discussed <i>infra</i>, the court will consider whether the allegations contained in the response brief are sufficient to allow Plaintiff an opportunity to amend the complaint with respect to her FMLA cause of action.  <u>See</u> <u>Bouton v. Ocean Properties, Ltd.</u>, __ F. Supp. 3d __, __, 2016 WL 7324143, at *5 (S.D. Fla. August 15, 2016) (although "Plaintiff's arguments in his Response do not constitute factual allegations upon which the Court may rely" in ruling on the motion to dismiss, the court nonetheless allowed the plaintiff the opportunity to further amend the complaint to include the factual basis included in his response); <u>Levy v. Gilbert-Krupin Ins. Services, LLC</u>, 2011 WL 1331270, at *3 (S.D. Fla. April 6, 2011) (same).

### a.  Federal Causes of Action

Plaintiff's federal claims are brought pursuant to Title VII, the ADA, the EPA and the FMLA.  [<u>Id.</u>].  Title VII makes it unlawful for an employer "to discriminate

12

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from retaliating against employees for certain protected practices. Specifically, the statute provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). The ADA prohibits covered employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

The EPA states in pertinent part:

> (1) No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .

13

29 U.S.C. § 206(d)(1).  And the FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: . . . (C) In order to care for the . . . daughter . . . of the employee, if such . . . daughter . . . has a serious health condition [or] (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1).

### 1.    Title VII and ADA

Defendant seeks dismissal of Plaintiff's Title VII discrimination and retaliation claims and ADA discrimination claims because the complaint was not filed within ninety days of receipt of the Right to Sue Letters.  [Doc. 3 at 6-7, 9-10].  Plaintiff provides no legal argument in opposition to Defendant's motion to dismiss on this ground.  [Doc. 6].  "Under Title VII, in cases where the EEOC does not file suit or obtain a conciliation agreement, the EEOC 'shall so notify the person aggrieved and within 90 days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved. . . .'" Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1339 (11th Cir. 1999) (quoting 42 U.S.C. § 2000e-5(f)(1)); and see Miller v. Georgia, 223 Fed. Appx. 842, 844 (11th Cir. 2007) (same).  "The ADA provides the same statute of limitations, as it expressly

incorporates the enforcement mechanisms contained in Title VII, 42 U.S.C. § 2000e-5." <u>Miller</u>, 223 Fed. Appx. at 844 (citing 42 U.S.C. § 12117(a)); <u>and see</u> <u>Zillyette</u>, 179 F.3d at 1339 (noting that the same procedural requirements apply to both Title VII and ADA claims). It is well-settled that this provision means a complainant must file a Title VII and ADA suit within ninety days after receipt of the right-to-sue notice. <u>See</u> <u>Abram v. Fulton County Government</u>, 598 Fed. Appx. 672, 674 (11th Cir. 2015) (requiring filing of ADA claim within ninety days of being notified of right to sue); <u>Zillyette</u>, 179 F.3d at 1339 (same); <u>Stallworth v. Wells Fargo Armored Serv. Corp.</u>, 936 F.2d 522, 524 (11th Cir. 1991) (requiring filing of Title VII complaint within ninety days of receipt of right to sue letter); <u>Whitehurst v. Liquid Environmental Solutions, Inc.</u>, 45 F. Supp. 3d 1328, 1341 (M.D. Fla. 2014) (same). There is a presumption that a right-to-sue notice is received by a complainant three days from when it was mailed. <u>See</u> <u>Baldwin County Welcome Ctr. v. Brown</u>, 104 S. Ct. 1723, 1724 (1984) (applying presumption that right-to-sue letter was received three days from when it was issued); <u>Arrington v. Alabama State Univ.</u>, 2008 WL 5071735, at *3 (M.D. Ala. November 25, 2008). "Once the defendant contests this issue, the plaintiff has the burden of establishing that [she] met the ninety day filing requirement." <u>Green v. Union Foundry Co.</u>, 281 F.3d 1229, 1234 (11th Cir. 2002).

15

Plaintiff filed her first EEOC charge based on alleged racial discrimination and retaliation for asserting claims of unlawful discrimination for conduct allegedly occurring from January 16, 2013, through March 14, 2013. [3/27/13 EEOC Charge]. The agency charge number assigned to this charge was 410-2013-03093. [Id.]. Plaintiff filed her second EEOC charge on March 11, 2014, asserting claims for unlawful discrimination based on her race and sex and based on disability and for retaliation for opposing unlawful discrimination under Title VII. [3/11/14 EEOC Charge]. The agency charge number assigned to this charge was 410-2014-02475. [Id.]. On August 7, 2014, the EEOC mailed to Plaintiff the Right to Sue Letters for agency charge numbers 410-2013-03093 and 410-2014-02475 advising Plaintiff that the EEOC was unable to find any violations and notifying Plaintiff that she had ninety days to file a lawsuit or "your right to sue based on this charge will be lost." [Right to Sue Letters]. Plaintiff acknowledges that she received the right to sue notices and that she decided not to act on the notices. [Doc. 6 at 2].

The undisputed record before the court establishes that Plaintiff received the Right to Sue Letters, mailed on August 7, 2014, presumably on or about August 10, 2014; however, Plaintiff did not file her lawsuit asserting causes of action based on alleged violations of Title VII and the ADA until September 12, 2016. Plaintiff's

complaint was filed almost two years after the statute of limitations expired on these claims. The claims are barred by the statute of limitations.

For these reasons, the court recommends that Defendant's motion [Doc. 3] to dismiss any and all claims pursuant to Title VII and the ADA be granted and that these claims be dismissed with prejudice.[6]

---

[6]For this reason, the court will not address in depth whether the Eleventh Amendment bars Plaintiff's claims pursuant to the ADA against Defendant GDOT. However, the court notes that Defendant's argument on this ground is arguably not well-taken. GDOT is clearly an arm of the state, see Stephens v. Georgia Dep't of Transportation, 134 Fed. Appx. 320, 324 (11th Cir. 2005), foreclosing suits against it under the Eleventh Amendment absent Congressional abrogation of the immunity or waiver by the State, see Kimel v. Florida Bd. of Regents, 120 S. Ct. 631, 640 (2000); Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 97 S. Ct. 568, 572 (1977)); McClendon v. Georgia Dep't of Cmty. Health, 261 F.3d 1252, 1256-57 (11th Cir. 2001). Congress has not validly abrogated the states' immunity for claims for monetary damages brought pursuant to Title I of the ADA. See Bd. of Trustees of the Univ. of Alabama v. Garrett, 121 S. Ct. 955, 967-68 (2001); Rizo v. Alabama Dep't of Human Resources, 228 Fed. Appx. 832, 835 (11th Cir. 2007). However, the court agrees with the District Court decision in Jones v. Georgia Dep't of Corrections, 2008 WL 779326 (N.D. Ga. March 18, 2008), which held that the defendant's act of removing the complaint, alleging ADA claims, from state court to federal court subjected the defendant to federal jurisdiction and constituted a waiver of "its Eleventh Amendment immunity." Id., at **4-5 (citing Lapides v. Bd. of Regents of Univ. System of Georgia, 122 S. Ct. 1640, 1644-46 (2002); and Williamson v. Dep't of Human Resources, 258 Ga. App. 113, 116, 572 S.E.2d 678, 681 (2002)); and see Anderson v. Bd. of Regents of Univ. System of Georgia, 2010 WL 427652, at **2-3 (N.D. Ga. February 2, 2010) (finding a waiver of Eleventh Amendment immunity based on removal of action from state court).

### 2.   EPA

Plaintiff Crawford alleges that Defendant GDOT violated the EPA. The entirety of Plaintiff's allegations regarding this cause of action are as follows. On March 27, 2013, Plaintiff filed a charge of discrimination with the EEOC based on racial discrimination and for retaliation for complaining about that discrimination. [Complt. ¶ 2.III.; 3/27/13 EEOC Charge]. Thereafter, she alleges that "round 1 retaliation and harassment," which began in March 2013, continued through May 6, 2013. This retaliation and harassment included "denying training, an unnecessary coaching write-up, [and] denying [Plaintiff] qualified leave of absence." [Complt. ¶ 2.IV.]. Plaintiff alleges that this conduct violated the EPA. [Id.].

"To establish a *prima facie* case under the Equal Pay Act, an employee must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Arrington v. Cobb County, 139 F.3d 865, 876 (11th Cir. 1998) (quoting Corning Glass Works v. Brennan, 94 S. Ct. 2223, 2228 (1974); 29 U.S.C. § 209(d)(1)) (internal quotation marks omitted). At the motion to dismiss stage, "a plaintiff need only demonstrate that the jobs at issue are substantially similar; a plaintiff does not have to show that the skills

or qualifications of the actual male and female employees holding the positions are also substantially equivalent." Id.

The statute of limitations under the Fair Labor Standards Act applies to claims brought pursuant to the EPA. See 29 U.S.C. § 255; Alvarez Perez v. Sanford–Orlando Kennel Club, Inc., 515 F.3d 1150, 1164 (11th Cir. 2008) ("[T]he FLSA's statute of limitations . . . appl[ies] to EPA claims."). Thus, an EPA action is time-barred "unless commenced within two years after the cause of action accrued . . . ."[7] 29 U.S.C. § 255(a). "Because each violation gives rise to a new cause of action, each [unequal paycheck] begins a new statute of limitations period as to that particular event." Knight v. Columbus, Georgia, 19 F.3d 579, 582 (11th Cir. 1994). "[A]n Equal Pay Act claimant may only recover for the discriminatory pay received within the statute of

---

[7]If a "willful" violation occurs, the statute of limitations is extended to three years. See Ramsey v. State of Alabama Pubic Service Comm'n, 86 F. Supp. 2d 1124, 1128 (M.D. Ala. 2000) ("the limitations period for claims arising under the Equal Pay Act is two years, except in cases involving 'willful' violations, for which a three-year limitations period attaches"); 29 U.S.C. § 255(a). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [Act]." McLaughlin v. Richland Shoe Co., 108 S. Ct. 1677, 1681 (1988). In the present case, there are no facts supporting an inference of a willful violation. And the court notes that Plaintiff alleges that the EPA violations occurred during the time period of March 27, 2013, to May 6, 2013; therefore, even if the court applied the three-year statute of limitations, Plaintiff's complaint, filed on September 12, 2016, would fall outside that limitations period.

limitations period." Slattery v. Precision Response Corp., 167 Fed. Appx. 139, 142 n.1 (11th Cir. 2006) (citing Ledbetter v. Goodyear Tire & Rubber Co., 421 F.3d 1169, 1180 n.15 (11th Cir. 2005)); and see Shiver v. Career Consultants, Inc., 142 F. Supp. 3d 1191, 1196-97 (M.D. Ala. 2015) (same).

As noted, Plaintiff alleges that the time period for her EPA cause of action commenced on March 27, 2013, and continued until May 6, 2013.[8]  The two-year statute of limitations expired on May 6, 2015, over a year before she filed her complaint on September 12, 2016.  Additionally, Plaintiff presented absolutely no facts supporting a claim under the EPA in either the complaint or Plaintiff's response to the motion to dismiss.  [Complt.; Doc. 6].  For these reasons, the court recommends that Defendant's motion to dismiss Plaintiff's EPA claim be granted and that the EPA claim be dismissed with prejudice.

### 3.     FMLA

Defendant seeks dismissal of Plaintiff's FMLA claims on two grounds.  First, Defendant asserts that Plaintiff's alleged FMLA claims all fall outside of the statute's two-year statute of limitations because the complaint was filed on September 12, 2016, three years after her termination which occurred on September 12, 2013.  [Doc. 3 at

---

[8]The court further notes that, although Plaintiff alleged additional facts in support of her other federal causes of action in her response to the motion to dismiss, Plaintiff's brief is silent as to any EPA claim.  [Doc. 6].

7-8, citing 29 U.S.C. § 2716(c)(1)].  Defendant also asserts that Plaintiff's FMLA self-care claims are barred by Eleventh Amendment immunity.  [Id. at 8-9, citing Garrett v. Univ. of Alabama Bd. of Trustees, 193 F.3d 1214, 1218-19 (11th Cir. 1999), rev'd on other grounds Garrett, 121 S. Ct. 955].  Plaintiff did not directly address either of Defendant's arguments in her response brief.  [Doc. 6].

"[T]he FMLA creates two types of claims:  interference claims, in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the Act . . . and retaliation claims, in which an employee asserts that [her] employer discriminated against [her] because [she] engaged in activity protected by the Act . . . ."  Strickland v. Water Works and Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001) (internal citations omitted); accord Johnson v. Morehouse Coll., Inc., 199 F. Supp. 2d 1345, 1353 (N.D. Ga. 2002).  Deciphering the type of claim being brought by Plaintiff is difficult due to the narrative form of her complaint; however, the court concludes that she is asserting FMLA interference claims based both on requests for leave of absence for her own serious medical conditions and for her daughter's serious medical conditions. The interference claims arise as part of Defendant GDOT's retaliation and harassment after Plaintiff

21

made internal complaints of racial discrimination and filed the March 2013 EEOC charge of Title VII racial and retaliatory discrimination.  [Complt.].

In the complaint, Plaintiff alleges the following regarding the FMLA claims. Plaintiff alleges that, after filing an "In-House Grievance" on January 14, 2013, based on "unfair treatment, unlawful discrimination, and . . . managers . . . erroneously applying GDOT policies and procedures[,]" her "work environment shifted for the worse."  [Id. ¶ 2.I.c.].  She was allegedly mistreated, violating the Georgia FEPA and other state rules and regulations, and due to this conduct, Plaintiff filed a charge of discrimination with the EEOC on March 27, 2013, based on race and retaliation.  [Id. ¶ 2.III.; 3/27/13 EEOC Charge].   Thereafter, Plaintiff alleges that the "round 1 retaliation and harassment" continued through May 6, 2013, and included "denying training, an unnecessary coaching write-up, [and] denying [Plaintiff] qualified leave of absence."  [Complt. ¶ 2.IV.].  This conduct is alleged by Plaintiff to have violated the FMLA.  [Id.].  Plaintiff provides no other information about the circumstances surrounding this denial of leave.  [Id.].

Plaintiff next alleges that a "second round of retaliation and harassment" occurred from May 6, 2013, through August 2, 2013, involving her supervisors "denying/approving training, taking a qualified leave of absence, demotion, computer

22

sabotage, and write-ups." [Id. ¶ 2.V.].  And, Plaintiff alleges that a third and final round "of a more aggressive form of retaliation" took place from August 5, 2013, through September 12, 2013, when Plaintiff was terminated from her employment, and involved using GDOT policies and procedures to use sick leave against her, "to deny and ignore reasonable accommodations for FMLA for my oncologist, daughters medical condition and back injury," denying attendance at meeting and issuing performance accusations. [Id. ¶ 2.VI.].  With respect to the FMLA claims during the final time frame, Plaintiff specifically alleges that from August 5, 2013, through August 19, 2013, she requested FMLA leave due to a back injury which was denied on August 21, 2013, including ignoring health accommodation for Plaintiff's daughter, violating the FMLA. [Id. ¶ 2.VI.a.].  Again, the complaint provides no additional factual allegations supporting either Plaintiff's self-care leave requests or the request for leave to care for her daughter. [Complt.].

## A.    Statute of Limitations

As noted, Defendant contends that a two-year statute of limitations applies to the FMLA claims alleged in Plaintiff's complaint.  The FMLA provides that actions alleging violations of the Act must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29

U.S.C. § 2617(c)(1).  The FMLA also provides that actions based on willful conduct must be brought within three years of the alleged violation.  29 U.S.C. § 2617(c)(2).  "The Supreme Court has held in the FLSA context that an employer acts willfully when it 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  <u>Liu v. Univ. of Miami, Sch. of Medicine</u>, 138 F. Supp. 3d 1360, 1373-74 (S.D. Fla. 2015) (quoting <u>McLaughlin</u>, 108 S. Ct. at 1680-81) (determining the standard for "willfulness" under the FLSA which uses language identical to the FMLA with regard to the two or three year limitation period)); <u>and see</u> <u>Sampson v. Citibank, F.S.B.</u>, 53 F. Supp. 2d 13, 19 (D. D.C. 1999) ("Willful conduct in this context is generally viewed as an employer that knows its conduct to be wrong or has shown reckless disregard for the matter in light of the statute.").  "'If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then . . . [its actions] should not be . . . considered [willful].'"  <u>Liu</u>, 138 F. Supp. 3d at 1374 (quoting <u>McLaughlin</u>, 108 S. Ct. at 1682 n.13); <u>and see</u> <u>Cooper v. Henderson</u>, 174 F. Supp. 3d 193, 205 (D. D.C. 2016) ("'The three-year statute of limitations for willful violations does not apply unless the complaint contains some express or implied allegation of willful conduct.'") (citation omitted).

Defendant presents no argument in support of applying the two-year statute of limitations but, instead, simply opines that the FMLA has a two-year limitations period and that, because Plaintiff's termination occurred more than two years before she filed her complaint, the FMLA claims are barred. [Doc. 3 at 7-8]. Plaintiff, who is proceeding *pro se*, not surprisingly, did not respond that the allegations in her complaint, and if considering the additional allegations in her response brief, indicate that Defendant's interference with her FMLA requests were willful and that a three-year limitations period applies. [Doc. 6]. If the three-year limitations period is applicable, Plaintiff's complaint, filed on September 12, 2016, falls within three years of her termination on September 12, 2013, arguably the "last event" occurring in the last round of retaliation and harassment resulting in interference with her FMLA requests for leave both for herself and to care for her daughter. These FLMA claims would be actionable.

Although Plaintiff does not use the word willful in the complaint, she alleges that in retaliation for her complaints of racial discrimination, Defendant denied or seriously delayed approval of FMLA leave requests. [Complt. ¶¶ II., IV.-VI.]. If an intent to retaliate against Plaintiff formed the basis for Defendant's interference with Plaintiff's leave requests instead of a reasoned application of the FMLA, the court

25

could conclude that Defendant acted recklessly under the FMLA, that is, that Defendant "'showed a reckless disregard for the matter of whether its conduct was prohibited by the statute.'" Liu, 138 F. Supp. 3d at 1374 (citation omitted).  In Cooper, the district court found that the allegations in the plaintiff's complaint, although not using the word "willful," sufficiently "set forth an intentional pattern of harassment and retaliation, and 'not merely negligent' behavior" in the handling of the plaintiff's FMLA requests.  174 F. Supp. 3d at 206 (citation omitted); and see Viellot-Philistin v. The Public Health Trust, 2004 WL 3142553, at *5 (S.D. Fla. March 5, 2004) ("'Willful' is 'generally understood to refer to conduct that is not merely negligent.'") (quoting McLaughlin, 108 S. Ct. at 1681).  The plaintiff alleged that, after returning from FMLA leave, her superiors harassed her, eventually terminating her employment and that "these actions were taken in retaliation for her protected activity with the intent to humiliate and harass her." Cooper, 174 F. Supp. 3d at 205-06.  The court held that "[f]or the purposes of surviving a motion to dismiss, these allegations are sufficient" to trigger the three-year statute of limitations. Id. at 206.  Similarly, in this case, Plaintiff alleges that she was harassed and retaliated against, although apparently not for exercise of FMLA rights but for asserting her rights under Title VII, resulting in interference with her FMLA rights.  As did the court in Cooper, this court finds that

26

Plaintiff's allegations are sufficient, at this stage of the proceedings, to trigger application of the three-year statute of limitations.

And, if these allegations were not sufficient, consideration of the additional allegations of fact involving Defendant's conduct during the August - September 2013 time period raises the inference that Defendant's conduct was not merely negligent or unreasonable but reckless.  Plaintiff alleges that on August 14, 2013, she provided FMLA paperwork for leave covering the period of August 5, 2013, through August 18, 2013 - this leave was apparently due to a back injury suffered on July 31, 2013.  The leave was denied on August 21, 2013.  [Doc. 6 at 10-11].  And on September 9, 2013, Plaintiff contacted Human Resources about the FMLA paperwork sent on September 3, 2013, by her daughter's doctor but was advised the paperwork was not received.  Plaintiff unsuccessfully attempted to contact the Division Director of Human Resources on September 11, 2013, about the paperwork.    [Id. at 12].   And on September 12, 2013, Plaintiff was terminated.  [Id.].  During this time, Plaintiff alleges that she was complaining about "the continuous retaliation in [her] work environment." [Id. at 11].  While the court currently interprets Plaintiff's complaint as presenting only an interference claim, her additional allegations may rise to the level of also asserting a FMLA retaliation claim.

Although the court cannot consider these allegations in ruling on the motion to dismiss, see Greason, 2012 WL 3022012, at *4, the allegations indicate "that a more carefully drafted complaint may state [FMLA] claims upon which relief may be granted[,]" Levy, 2011 WL 1331270, at *3, because the three-year statute of limitations may be applicable.  If applicable, as noted, Plaintiff was terminated on September 12, 2013, and her complaint was filed on September 12, 2016, just meeting the three-year limitation period.  See Hite v. Hill Dermaceuticals, Inc., 2013 WL 93199, at *3 (M.D. Fla. January 8, 2013) (concluding at the motion to dismiss stage of the proceedings that the "'last event' for purposes of interpreting the FMLA's statute of limitations was [the plaintiff's] termination" and that, although not specifically alleged, finding that the inquiry as to whether the plaintiff's termination is casually related to the FMLA claims inappropriate on a motion to dismiss).  Accordingly, the court finds that Plaintiff may be able to state a viable FMLA claim as it relates to Defendant's conduct occurring in August and September 2013 and resulting in her termination, the "last event," on September 12, 2013.  However, even if the court applies the three-year statute of limitations to Plaintiff's remaining FMLA claims, that is, those claims based on Defendant's delayed authorization of or denial of leave requested before August 2013, are barred.

28

For these reasons, the court recommends that Defendant's motion to dismiss Plaintiff's FMLA claims on statute of limitations grounds be granted and that FMLA claims arising in August and September 2013, arguably related to Plaintiff's termination, be dismissed without prejudice and that all other FMLA claims be dismissed with prejudice.

## B.   Eleventh Amendment Immunity

Finally, with respect to Plaintiff's FMLA claims, Defendant contends that Eleventh Amendment immunity bars her self-care FMLA causes of action.  [Doc. 3 at 8-9].  Plaintiff does not address Defendant's arguments.

Defendant is correct that, as an arm of the State of Georgia, see Stephens, 134 Fed. Appx. at 324, the Eleventh Amendment (or sovereign) immunity ordinarily bars lawsuits against the DOT under the self-care provisions of the FMLA.  See Coleman v. Court of Appeals of Maryland, 132 S. Ct. 1327, 1334-38 (2012) (finding that Congress exceeded its authority in abrogating the States' immunity from suit for claims brought pursuant to the self-care provisions of the FMLA); Wayne v. State of Florida Dep't of Corrections, 157 F. Supp. 3d 1202, 1205-07 (S.D. Fla. 2016) (the Eleventh Amendment provides immunity from lawsuits brought pursuant to the FMLA).  However, "[s]uits for damages under certain family-care provisions are not

29

barred by the Eleventh Amendment." Kicklighter v. McIntosh County Bd. of Comm'rs, 162 F. Supp. 3d 1363, 1379 (S.D. Ga. 2016). Defendant does not argue that Eleventh Amendment immunity bars Plaintiff's claims for the family-care FMLA requests she made for the care of her daughter in September 2013 just before Plaintiff's termination.

As to Plaintiff's self-care FMLA claims, the same issue confronting Defendant's argument that Plaintiff's ADA claims were barred by the Eleventh Amendment, that is, that Defendant subjected itself to federal court jurisdiction by removing this case from state court, see Anderson, 2010 WL 427652, at **2-3, must be addressed by the court. The question is whether the decision in Jones, 2008 WL 779326, holding that the defendant's act of removing the complaint, alleging ADA claims, from state court to federal court subjected it to federal jurisdiction and constituted a waiver of "its Eleventh Amendment immunity," should be applied to Plaintiff's FMLA self-care claims. Id., at **4-5.

There is difference between the ADA claims and the FMLA claims originally filed by Plaintiff in the state court. Under the FEPA, the State of Georgia explicitly waived sovereign immunity for state disability claims arising out of an individual's employment. See Williamson, 258 Ga. App. at 116, 572 S.E.2d at 681 (citing

O.C.G.A. §§ 45-19-36(a)(3) and 45-19-36(b)).  Therefore, while Plaintiff's complaint was pending in state court, Defendant GDOT lacked an argument that immunity barred the ADA claims.  Id. ("Because, in the FEPA, the state by legislative act waived its sovereign immunity as to *state* disability discrimination claims by its employees, the state may not selectively cloak itself in sovereign immunity as to *federal* disability discrimination claims by its employees.") (emphasis in original).  By removing the complaint to federal court and arguing that immunity barred the ADA claims, Defendant GDOT engaged in "a litigation tactic to get around an otherwise valid waiver of immunity[,]" conduct which the court in Jones found was foreclosed by the Supreme Court in Lapides.[9]  See Jones, 2008 WL 779326, at *4.

However, the State of Georgia has not explicitly waived its sovereign immunity in state court with respect to claims associated with requests for leave for serious medical conditions, such as protected by the FMLA.  Accordingly, Defendant could assert sovereign immunity in state court and removing Plaintiff's complaint to federal court was not a litigation tactic to avoid a statutory waiver.  That being said, as found

---

[9]If Plaintiff had filed her complaint in federal court, the FEPA waiver of sovereign immunity for disability claims brought in state court would not have impacted Defendant GDOT's Eleventh Amendment immunity for ADA self-care claims.  See Jackson v. Oconee Cmty. Service Bd., 2006 WL 1652236, at *3 (M.D. Ga. June 8, 2006).

31

by the district court in <u>Anderson</u>, the language of the Supreme Court's decision in <u>Lapides</u> is broad enough to establish a waiver of Eleventh Amendment immunity for any claims asserted in a case removed from state court. <u>Anderson</u>, 2010 WL 427652, at **2-3. In <u>Lapides</u>, as in the present case, "the State was brought involuntarily into the case as a defendant in the original state-court proceedings. But the State then voluntarily agreed to remove the case to federal court." 122 S. Ct. at 1644 (citations omitted). Because "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum[,]" the Supreme Court held that a state effectively waives its Eleventh Amendment immunity when it removes a case to federal court. <u>Id.</u> at 1643-44, 1646 (noting it would be "anomalous or inconsistent" to both invoke federal court jurisdiction by removal and then to claim immunity denying that same jurisdiction, the Supreme court stated that "where a State *voluntarily* becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment") (citation and internal quotation marks omitted; emphasis in original). The court agrees with the decision in <u>Anderson</u> applying <u>Lapides</u> to any claims found within a complaint removed to federal court.

32

For these reasons, the court recommends that Defendant's motion to dismiss Plaintiff's FMLA claims based on Eleventh Amendment immunity be denied.

**b.    State Law Claim - Georgia FEPA**

In Plaintiff's complaint, she asserts the following regarding her FEPA claim. Plaintiff alleges that, after filing an "In-House Grievance" on January 14, 2013, based on "unfair treatment, unlawful discrimination, and . . . managers . . . erroneously applying GDOT policies and procedures[,]" her "work environment shifted for the worse."  [Id. ¶ 2.I.c.].  Plaintiff alleges that during the first round of retaliation, occurring during the period March 4, 2013, through March 27, 2013, her supervisors issued performance and disciplinary write-ups, conducted intimidating meetings and altered her work assignments.  [Id. ¶ 2.II.].  This conduct, Plaintiff alleges, violated the FEPA, the Code of Ethics for Government Service, and the Governor's Executive Order of January 10, 2011.  [Id.].  Defendant contends that, because Plaintiff failed to administratively exhaust this claim, the FEPA claim should be dismissed.  [Doc. 3 at 12-13].  In her response brief, Plaintiff does not address her FEPA claim in any manner.  [Doc. 6].  Defendant is correct, and Plaintiff's FEPA claim should be dismissed.

33

In <u>Jackson</u>, the district court explained how a party brings a claim under the

FEPA:

> [T]he "judicial review" provision of FEPA addresses how a party may go about pursuing a FEPA claim.  A plaintiff may bring her claim before a special master or FEPA administrator.  Thereafter, a plaintiff may appeal "by filing a petition for review in the ***superior court*** in the county in which the alleged unlawful practice occurred or in the ***superior court*** of the residence of the respondent."

2006 WL 1652236, at *3 (quoting O.C.G.A. § 45-19-39; adding emphasis).  "This

provision requires a plaintiff to file a complaint with an administrator who then

determines whether reasonable cause exists to support an unlawful employment

practice claim. . . .   'The filing of suit in court occurs *only after* the aggrieved

individual has proceeded through the administrative framework. . . .'"  <u>Owens v.</u>

<u>Pineland Mental Health, Mental Retardation & Substance Abuse Services</u>, 2012 WL

2887007, at *2 (S.D. Ga. July 13, 2012) (quoting <u>Solomon v. Hardison</u>, 746 F.2d 699,

740 (11th Cir. 1984); adding emphasis); <u>and see</u> <u>Ramzy v. Columbus Consol.</u>

<u>Government</u>, 2015 WL 5838484, at *4 (M.D. Ga. October 5, 2015) (because the

plaintiffs failed to allege exhaustion of administrative remedies, their FEPA claims are

barred).  Plaintiff has not alleged exhaustion of FEPA administrative remedies, and

claims arising under that statute are barred.

34

For these reasons, the court recommends that Defendant's motion to dismiss Plaintiff's FEPA claims be granted and that Plaintiff's FEPA claims be dismissed with prejudice.

## IV. Leave to Amend FMLA Claim

In <u>Spear v. Nix</u>, 215 Fed. Appx. 896 (11th Cir. 2007), the Eleventh Circuit concluded that when a plaintiff is proceeding *pro se* and "'[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'" <u>Id.</u> at 902 (citation omitted); <u>accord</u> <u>Case v. Riley</u>, 270 Fed. Appx. 908, 910-11 (11th Cir. 2008); <u>Canty v. Fry's Electronics, Inc.</u>, 736 F. Supp. 2d 1352, 1363 (N.D. Ga. 2010). Even if a *pro se* plaintiff does not request the opportunity to amend prior to dismissal, the court should provide that opportunity - if an amended complaint might state a claim. <u>See</u> <u>Jackson v. Vaughan Regional Medical Center</u>, 2009 WL 3242082, at *3 (S.D. Ala. October 6, 2009) ("courts have continued to provide an opportunity for *pro se* plaintiffs such as Jackson to correct pleading deficiencies via amendment even where no request for leave to amend has been made, so long as 'a more carefully drafted complaint might state a claim'") (quoting <u>Bank v. Pitt</u>, 928 F.2d 1108, 1112 (11th Cir. 1991)); <u>and see</u> <u>Bryant v. Dupree</u>, 252 F.3d 1161, 1163 (11th Cir. 2001)

35

("Generally, [w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") (citation and internal quotation marks omitted).

In the present case, as discussed *supra*, the court cannot determine that Plaintiff will be unable to state a FMLA cause of action related to Plaintiff's request for self-care and family-care FMLA leave in August and September 2013, the period of time immediately preceding the termination of Plaintiff's employment on September 12, 2013, that date falling within the three-year statute of limitations for willful violations of the FMLA. It is therefore recommended that Plaintiff be allowed to file an amended complaint that (1) is labeled as an amendment to Crawford v. Georgia Dep't of Transportation, 1:16-CV-3810-WSD-JFK, (2), in separately enumerated paragraphs, sets forth the facts supporting FMLA claim(s) for interference with and/or retaliation for the exercise of Plaintiff's self-care and/or family-care rights during the period after August 1, 2013, until the date of Plaintiff's termination, (3), in separately enumerated paragraphs, sets forth any additional facts relevant to the statute of limitations, and (4), in separate counts, states the FMLA claim(s) being asserted against Defendant GDOT. See Fed. R. Civ. P. 8 and 10.

36

If the district court adopts the undersigned's recommendation and grants Plaintiff leave to file an amended complaint and Plaintiff fails to comply with the instructions provided and to do so within the time prescribed by the court, it is recommended that this action be dismissed with prejudice at that time. See Duckworth v. Symon Says Enterprises, Inc., 2014 WL 495389, at *4 (M.D. Fla. February 6, 2014) (granting the defendant's Rule 12(b)(6) motion to dismiss and dismissing the plaintiff's claims, including her FMLA claim, without prejudice with leave to file an amended complaint within two weeks); Buckley v. Bayrock Mortg. Corp., 2010 WL 476673, at **9-10 (N.D. Ga. February 5, 2010) (granting defendant's Rule 12(b)(6) motion and dismissing plaintiff's complaint without prejudice with leave to file a properly amended complaint and holding that if plaintiff failed to file such a complaint, the court would dismiss the action with prejudice); Taylor v. Alvarez, 2008 WL 1840719, at *5 (S.D. Fla. April 21, 2008) (dismissing plaintiff's complaint without prejudice on defendants' motion to dismiss, giving plaintiff approximately three weeks to file an amended complaint, and holding that if plaintiff failed to do so, the court would dismiss the case with prejudice); Holmes v. City of East Point, 2005 WL 3478375, at *5 (N.D. Ga. December 20, 2005) (dismissing plaintiff's claims without prejudice and, although not obligated to do so, *sua sponte* permitting plaintiff to file

an amended complaint within thirty days and holding that if plaintiff failed to do so, the court would dismiss plaintiff's claims with prejudice).

## V.     Conclusion

Based on the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendant's motion [Doc. 3] to dismiss the complaint be **GRANTED** and that Plaintiff's Title VII, ADA, EPA and Georgia FEPA claims be **DISMISSED WITH PREJUDICE** and that Plaintiff's FMLA claims arising before August 1, 2013, be **DISMISSED WITH PREJUDICE** but the court further **RECOMMENDS** that Plaintiff's FMLA claims based on requests for FMLA leave arising after August 1, 2013, be **DISMISSED WITHOUT PREJUDICE** with leave for Plaintiff to file an amended complaint.  Should the district court adopt this report and recommendation, it is **RECOMMENDED** that Plaintiff be given leave to file an amended complaint, as instructed *supra*, within twenty-one (21) days of the district court's order.  If Plaintiff fails to file an amended complaint in compliance with the court's instructions by that time, the undersigned **RECOMMENDS** that this action then be dismissed with prejudice.

38

**SO RECOMMENDED**, this 1st day of February, 2017.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)