**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**CATRICE CRAWFORD,**

          **Plaintiff,**

   **v.**                             **1:16-cv-3810-WSD**

**GEORGIA DEPARTMENT OF
TRANSPORTATION (GDOT),**

          **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Janet F. King's

Non-Final Report and Recommendation [9] ("R&R").  The R&R recommends that

the Court dismiss all of Plaintiff Catrice Crawford's ("Plaintiff") claims, except her

claims under the Family Medical Leave Act, 29 U.S.C. § 2612, et seq. ("FMLA")

arising after August 1, 2013.  Also before the Court are Defendant Georgia

Department of Transportation's ("GDOT") Objections to the R&R [11].

# I.    BACKGROUND

A.    <u>Facts</u>[1]

Plaintiff alleges that her employment with GDOT began on April 15, 2005. (Compl. [1.2] ¶ 2.I.a).  Over the next few years, Plaintiff received promotions and increases in her salary.  (<u>Id.</u> ¶ 2.I.a-b).  Plaintiff alleges that, after she filed an "In-House Grievance" on January 14, 2013, based on "unfair treatment, unlawful discrimination, and . . . managers . . . erroneously applying GDOT policies and procedures[,]" her "work environment shifted for the worse."  (<u>Id.</u> ¶ 2.I.c). Plaintiff alleges that she suffered three "rounds" of retaliation, the first of which occurred between March 4, 2013, and May 6, 2013.  During this time, Plaintiff alleges her supervisors issued performance and disciplinary write-ups, conducted intimidating meetings, and altered her work assignments.  (<u>Id.</u> ¶ 2.II).  This conduct, Plaintiff alleges, violated the Georgia Fair Employment Practices Act, O.C.G.A. § 45-19-20, <u>et</u> <u>seq.</u> ("FEPA"), the Code of Ethics for Government Service, and the Governor's Executive Order of January 10, 2011.  (<u>Id.</u>).  The alleged retaliation and harassment also included "denying training, an unnecessary

---

[1]    The facts are taken from the R&R and the record.  The parties have not objected to any specific facts in the R&R, and the Court finds no plain error in them.  The Court thus adopts the facts set out in the R&R.  <u>See</u> <u>Garvey v. Vaughn</u>, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

coaching write-up, [and] denying [Plaintiff] qualified leave of absence." (Id. ¶ 2.IV). Plaintiff alleges this conduct violated the FMLA and the Equal Pay Act, 29 U.S.C. § 206 et seq. ("EPA"). (Id.).

On March 27, 2013, Plaintiff filed a charge of discrimination with the EEOC, alleging race discrimination and retaliation. (Id. ¶ 2.III.; [3.1] ("First EEOC Charge")). Plaintiff alleges that a "second round of retaliation and harassment" occurred from May 6, 2013, through August 2, 2013. This second round involved her supervisors allegedly "denying/approving training, taking a qualified leave of absence, demotion, computer sabotage, and write-ups." (Id. ¶ 2.V).

The third and final round "of a more aggressive form of retaliation" took place from August 5, 2013, through September 12, 2013, when Plaintiff was terminated from her employment. The alleged retaliation involved GDOT using its "policies and procedures sick leave policy against [her] absence," "den[ying] and ignor[ing] reasonable accommodations for FMLA for [her] oncologist, daughters [sic] medical condition and back injury," excluding her attendance at meetings and issuing "performance evaluation accusations." (Id. ¶ 2.VI). Plaintiff alleges that, from August 5, 2013, through August 19, 2013, she requested FMLA leave due to a back injury, and, on August 21, 2013, leave was denied. She also alleges GDOT

denied a health accommodation for Plaintiff to care for her daughter, violating the FMLA. (Id. ¶ 2.VI.a). Plaintiff alleges that, on September 10, 2013, she was directed to move her office and was denied assistance to do so, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"). (Id. ¶ 2.VI.b).

After Plaintiff was terminated, on April 11, 2014, she filed a second EEOC charge of discrimination. ([3.2] ("Second EEOC Charge")). In it, Plaintiff alleged the following: (1) discrimination based on her race and sex, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), (2) retaliation, pursuant to Title VII, due to her complaints of discrimination that resulted in disciplinary write-ups, changes in job duties, work assignments and projects, denial of overtime and promotions, demotion, and denial of reasonable accommodation, and (3) violation of the ADA and denial of medical leave. (Id.).

On August 7, 2014, the EEOC issued right to sue letters on the First EEOC Charge and the Second EEOC Charge. ([3.3], [3.4]) ("Right to Sue Letters")). In both letters, Plaintiff was advised that, with respect to her Title VII and ADA claims, "Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost." (Id. (emphasis in original)). With respect to Plaintiff's EPA claim, she was advised that such "suits

must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment." (Id.).

B.     Procedural History

On September 2, 2016, Plaintiff filed her Complaint in the State Court of Fulton County, Georgia, asserting claims under Title VII, the ADA, the EPA, the FMLA, and the FEPA.  On October 13, 2016, GDOT removed this action to this Court.  ([1]).  On October 18, 2016, GDOT filed its Motion to Dismiss [3], arguing:  (1) Plaintiff's Title VII claims are untimely; (2) her FMLA claims fail to state a claim; (3) her ADA claims are untimely and barred by the Eleventh Amendment; (4) Plaintiff failed to state a claim under the EPA and, even if she had, her claim is barred by the statute of limitations; and (5) Plaintiff's FEPA claim should be dismissed for failure to exhaust administrative remedies.

On February 1, 2017, the Magistrate Judge issued her thorough R&R.  The Magistrate Judge found that Plaintiff's Title VII , EPA, and ADA claims are barred by the applicable statutes of limitation, and she recommends the Court grant GDOT's Motion to Dismiss these claims.  The Magistrate Judge recommends the Court grant GDOT's Motion to Dismiss Plaintiff's FEPA claims, because Plaintiff has not alleged that she exhausted her FEPA administrative remedies.  As to Plaintiff's FMLA claim, the Magistrate Judge, noting that the longer three-year

statute of limitations applies to claims of willful violations of the FMLA, recommends that the Court grant Plaintiff leave to amend her complaint, because her allegations suggest, but do not explicitly state, that GDOT's violations were willful. The Magistrate Judge found that, if the three-year limitations period applies, Plaintiff's FMLA claim is not barred by the statute of limitations.

With respect to GDOT's argument that Eleventh Amendment immunity bars Plaintiff's FMLA claim, the Magistrate Judge found that GDOT's removal of this action to federal court waived its Eleventh Amendment immunity claim. Accordingly, the Magistrate Judge recommends the Court dismiss all of Plaintiff's claims, except her FMLA claim. She recommends the Court allow Plaintiff to amend her Complaint with respect to claims based on FMLA leave after August 1, 2013.

On February 15, 2017, GDOT filed its Objections. GDOT objects only to the Magistrate Judge's recommendation with respect to Eleventh Amendment immunity on Plaintiff's FMLA claim. GDOT argues that the Court should apply Anderson v. Bd. of Regents of Univ. Sys. of Ga., 822 F. Supp. 2d 1342 (N.D. Ga. 2011) ("Anderson II"), and grant GDOT's Motion to Dismiss the FMLA claim on the grounds of Eleventh Amendment immunity. Plaintiff did not file any objections to the R&R.

## II. DISCUSSION

### A. Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Where no party has objected to the report and recommendation, the Court conducts only a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

### B. Analysis

The Court first considers, on *de novo* review, whether Eleventh Amendment immunity bars Plaintiff's FMLA claim. The Court then reviews for plain error the remainder of the R&R, to which no party objects.

#### 1. Eleventh Amendment Immunity

Plaintiff's FMLA claim arises under the self-care provisions of the Leave Act, 29 U.S.C. § 2612(a)(1)(D). Defendant argues that the Eleventh Amendment bars Plaintiff's FMLA claim.

GDOT, as an arm of the State of Georgia, is ordinarily protected by the

Eleventh Amendment from claims under the self-care provisions of the FMLA.

See Coleman v. Court of Appeals of Md., 566 U.S. 30, 37-38 (2012).  Because

GDOT voluntarily removed this action to federal court, however, the Court must

consider whether GDOT waived its Eleventh Amendment immunity.  In

Lapides v. Bd. of Regents, 535 U.S. 613 (2002) the Supreme Court of the United

States addressed whether a state that removes a case to federal court may then

invoke Eleventh Amendment immunity.  The pertinent facts of Lapides are as

follows:

> In Lapides, the plaintiff had filed suit in state court against the
> Georgia Board of Regents, raising a federal due process claim under
> § 1983 and state law claims under the Georgia Tort Claims Act.  The
> defendant removed the case to federal court based on federal question
> jurisdiction arising out of the § 1983 claim; at the same time,
> defendant filed a Rule 12(b)(6) motion to dismiss based on, among
> other reasons, the defendant's Eleventh Amendment immunity from
> suit. . . .
>
> The Supreme Court granted certiorari and held that the federal claim
> should be dismissed, but concluded that the State had waived any
> Eleventh Amendment immunity on the state-law claims when it
> removed the case to federal court. . . .
>
> [T]he Court noted that, given its dismissal of the federal claim, its
> answer on the waiver question was "limited ... to the context of
> state-law claims, in respect to which the State has explicitly waived
> immunity from state-court proceedings."  The Supreme Court's
> answer to that "limited" question was a direct one:  when a State has
> waived its own immunity in state court as to certain state-law claims,

8

it cannot undo that waiver merely by removing to federal court and seeking to use the Eleventh Amendment to do its work for it. In other words, but for its decision to remove the case to federal court, which removal was only made possible by the fortuitous inclusion of a federal claim in a complaint also containing a state-law claim, the State would have been forced to litigate the state-law claim in state court on the merits; there was no state immunity for this claim. . . .

Anderson II, 822 F. Supp. 2d at 1354-55 (alterations adopted, internal citations omitted).

The Lapides holding was narrow. "Because (1) the only remaining claim in the case was a state law claim and (2) Georgia had waived its immunity-based objection to suit in its own courts, the Court limited its holding to 'state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings.'" Stroud v. McIntosh, 722 F.3d 1294, 1299-1300 (11th Cir. 2013) (quoting Lapides, 535 U.S. at 617. "Moreover, the opinion declined to 'address the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court.'" Id. (quoting Lapides, 535 U.S. at 617).

Because the Supreme Court's reasoning in Lapides was broad but its holding was narrow, courts have wrestled with its effect on cases in which a state's underlying sovereign immunity from suit was not waived or abrogated in state court. See id. "Six Circuits that have expressly considered the question have

concluded that a state defendant's voluntary removal of a private suit to federal court does not by itself waive the state's general immunity from such a suit." Beaulieu v. Vermont, 807 F.3d 478, 487-88 (2d Cir. 2015) (citing cases). In Stroud, the Eleventh Circuit joined other circuits, including the Third and Fifth Circuits, in holding that, where a state removes a case to federal court, it waives its immunity-based objection to a federal forum, but may retain other aspects of sovereign immunity, including its immunity from liability for certain claims.[2] Stroud, 722 F.3d at 1301, 1303. In other words, when a state removes a case to federal court, it voluntarily invokes the jurisdiction of federal courts and waives its Eleventh Amendment immunity from suit in federal court. Whether the state retains its separate immunity from *liability* as to a particular claim, however, is a separate issue, determined according to the state's law. See Meyers ex rel.

_____

[2]     The Eleventh Circuit in Stroud interpreted opinions of the Seventh, Ninth, and Tenth Circuits as "read[ing] Lapides's broad reasoning to establish the general rule that a state's removal to federal court constitutes a waiver of immunity, regardless of what a state waived in its own courts." Stroud, 722 F.3d at 1301 (citing cases). In Beaulieu, the Second Circuit found that these Circuits "adhere to the generally accepted proposition that a state defendant's removal of an action to federal court waives the state's objection, based on the Eleventh Amendment, to the exercise of federal jurisdiction, but do not subscribe to the proposition advocated by Plaintiffs that by such removal the defendants also waive the state's general sovereign immunity." 807 F.3d at 488. Regardless whether there is a split of authority among the circuits as to the question at hand, the Eleventh Circuit's holding in Stroud is binding here.

Benzing v. Texas, 410 F.3d 236, 254 (5th Cir. 2005). "These principles have been applied in numerous cases." Barrett v. Mississippi Dep't of Pub. Safety, No. 3:11CV185TSL-JMR, 2013 WL 4015094, at *3-4 (S.D. Miss. Aug. 6, 2013) (citing cases).

Thus, the question here is whether Georgia retained its sovereign immunity from liability as to claims brought under the self-care provisions of the FMLA. The Court finds it has. Article I of the Georgia Constitution extends sovereign immunity to the state and all of its departments and agencies. Ga. Const. art. I, § II, ¶ IX(e). The immunity can only be waived by an Act of the Georgia legislature that specifically provides for and describes the extent of the waiver. Ga. Const. art. I, § II, ¶ IX(e). Any waiver must be established by the party seeking to benefit from the waiver. McCobb v. Clayton Cty., 710 S.E.2d 207 (Ga. Ct. App. 2011). There are two Georgia statutes that specifically waive sovereign immunity, neither of which applies to a claim under the self-care provisions of the FMLA. See Wells v. W. Ga. Tech. Coll., No. 1:11-cv-3422-JEC, 2012 WL 3150819, at *2 (N.D. Ga. Aug. 2, 2012) (explaining that Georgia has waived sovereign immunity only under the Georgia Tort Claims Act, O.C.G.A. § 50-21-20, et seq., and for actions arising from the state's breach of a written contract, neither of which apply to a claim under the self-care provisions of the FMLA).

Because the Georgia legislature has not waived immunity for Plaintiff's

FMLA claim, GDOT, as an arm of the State, retains immunity with respect to the

claim despite GDOT's removal of this case to federal court. See Stroud, 722 F.3d

at 1301. Accordingly, GDOT's Objections are sustained, and the Court grants

GDOT's Motion to Dismiss Plaintiff's FMLA claim.

### 2. Unobjected-to Portions of the R&R

Because no party objects to the remainder of the R&R, the Court reviews the

remainder of the R&R for plain error. See Slay, 714 F.2d at 1095.

Defendant seeks dismissal of Plaintiff's Title VII and ADA claims, because

Plaintiff did not file her Complaint within ninety days of her receipt of the Right to

Sue Letters. "Under Title VII, in cases where the EEOC does not file suit or obtain

a conciliation agreement, the EEOC 'shall so notify the person aggrieved and

within 90 days after the giving of such notice a civil action may be brought against

the respondent named in the charge . . . by the person claiming to be

aggrieved. . . .'" Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1339 (11th

Cir. 1999) (quoting 42 U.S.C. § 2000e-5(f)(1)). "The ADA provides the same

statute of limitations, as it expressly incorporates the enforcement mechanisms

contained in Title VII, 42 U.S.C. § 2000e-5." Miller v. Georgia, 223 F. App'x

842, 844 (citing 42 U.S.C. § 12117(a)).

The Magistrate Judge found that the "undisputed record before the court establishes that Plaintiff received the Right to Sue Letters . . . on or about August 10, 2014[,]" but that she did not file her lawsuit until September 12, 2016, almost two years after the expiration of the 90-day period within which she was required to file her Complaint. (R&R at 16-17). Accordingly, the Magistrate Judge recommends the Court grant Defendant's Motion to Dismiss Plaintiff's Title VII and ADA claims. The Court finds no plain error in these findings and recommendation, and Defendant's Motion to Dismiss is granted with respect to Plaintiff's Title VII and ADA claims. See Slay, 714 F.2d at 1095.

The Magistrate Judge next found that Plaintiff's EPA claims are barred by the two-year statute of limitations. An EPA action is time-barred "unless commenced within two years after the cause of action accrued . . . ." 29 U.S.C. § 255(a). Plaintiff alleges that the time period for her EPA cause of action commenced on March 27, 2013, and continued until May 6, 2013. The Magistrate Judge found that the two-year statute of limitations expired on May 6, 2015, over a year before Plaintiff filed her Complaint. The Magistrate Judge also found that Plaintiff did not allege any facts to support a claim under the EPA. Accordingly, the Magistrate Judge recommends the Court grant Defendant's Motion to Dismiss

Plaintiff's EPA claim. The Court finds no plain error in these findings and recommendation. See Slay, 714 F.2d at 1095.

Finally, the Magistrate Judge found that Plaintiff did not allege that she exhausted her FEPA administrative remedies. Georgia law "requires a [FEPA] plaintiff to file a complaint with an administrator who then determines whether reasonable cause exists to support an unlawful employment practice claim. . . . 'The filing of suit in court occurs only after the aggrieved individual has proceeded through the administrative framework. . . .'" Owens v. Pineland Mental Health, Mental Retardation & Substance Abuse Servs., No. CV 211-196, 2012 WL 2887007, at *2 (S.D. Ga. July 13, 2012) (quoting Solomon v. Hardison, 746 F.2d 699, 740 (11th Cir. 1984)). Because Plaintiff did not allege that she exhausted her FEPA administrative remedies, the Magistrate Judge recommends that the Court grant Defendant's Motion to Dismiss Plaintiff's FEPA claims. The Court finds no plain error in these findings and recommendation. See Slay, 714 F.2d at 1095.

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Janet F. King's Non-Final Report and Recommendation [9] is **ADOPTED AS MODIFIED**.

**IT IS FURTHER ORDERED** that GDOT's Objections to the R&R [11] are **SUSTAINED**.

**IT IS FURTHER ORDERED** that GDOT's Motion to Dismiss [3] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this 19th day of April, 2017.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE